# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH S. WILLHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-330-JHP-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Deborah S. Willhite requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 29, 1959, and was forty-nine years old at the time of the administrative hearing. She has a GED, was certified as a nurse's aide, and had two years of studying physical therapy but did not obtain an associate's degree (Tr. 67-68). The claimant has worked as a waitress, payroll clerk, cashier, housekeeper, nurse's aide, flower deliverer and janitor (Tr. 19). The claimant alleges inability to work since February 21, 1999 due to an on-the-job back injury (Tr. 161).

## Procedural History

On April 30, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Jeffrey S. Wolfe conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated April 16, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work but was limited to only occasional stooping, squatting, crawling, and climbing (Tr. 15). The ALJ

concluded that the claimant was not disabled because she could return to her past relevant work of cashier, waitress, and payroll clerk (Tr. 20).

## Review

The claimant contends the ALJ erred: (i) by failing to find her mental impairment severe at step two; (ii) by failing to consider all of her impairments in formulating her RFC at step four; and, (iii) by failing to perform a proper analysis of her credibility. The undersigned Magistrate Judge finds that the ALJ failed to analyze and evaluate the claimant's mental impairment, and the Commissioner's decision should therefore be reversed.

The record reveals that claimant's treating physician, Dr. Colin A. Marouk, D.O. noted that claimant was experiencing depression and was "tearful" in August 2000 (Tr. 245). In an October 2002 visit, Dr. Marouk observed claimant as "tearful" and "crying" (Tr. 236). In fact, there are several notations throughout the record in which the claimant is documented as being seen for depression and provided medication for the same (Tr. 260, 328, 329, 331, 333, 487, 492). In July 2008, the claimant's depression was noted as "fairly severe" by Dr. C. Scott Anthony, D.O., who also treated claimant over a number of years (Tr. 485).

The ALJ referred the claimant to Dr. Minor W. Gordon, Ph.D., for a complete psychological evaluation (Tr. 510-19). The claimant reported to Dr. Gordon that "[t]here are times I don't want to be here anymore but I have gotten better since I started taking Wellbutrin" (Tr. 510). Dr. Gordon noted that the claimant's "facial expression is one of

-4-

sadness", that her mood was affectively that of depression, and that her depression interfered with her sleep (Tr. 512). He administrated the Beck Depression Inventory and the Beck Anxiety Inventory, which reflected that the claimant was "suffering from a moderate to severe level of depression" and a "moderate level of anxiety" (Tr. 513). In two separate assessment tools administered by Dr. Gordon, claimant showed signs of suicidal ideation (Tr. 512, 514).

The claimant testified that she did seek but was unable to afford professional mental health services (Tr. 43, 485), but in early 2007, the claimant sought counseling from a volunteer psychologist through her church, Ms. Shirley O'Dell. It is unclear from the record her educational background or professional credentials, but claimant testified at the administrative hearing that she was an educated professional and that claimant's church was utilizing Ms. O'Dell's services for members of the church (Tr. 44). A review of Ms. O'Dell's treatment notes indicate that claimant was seeing Ms. O'Dell to work out familial and marital issues including, *inter alia*, domestic violence issues involving her son and husband (Tr. 480-483). These reports of depression and domestic issues were reiterated in a visit to Dr. Richard Polk, D.O., who wrote that claimant was suffering from anxiety and depression and that her husband was physically abusing her (Tr. 269).

The ALJ determined that the claimant had a severe impairment of degenerative disc disease of the lumbar spine with lower extremity radiculopathy, but concluded that her depression was a non-severe impairment that did not result in significant work-related limitations (Tr. 13-15). The ALJ analyzed the mental impairment in accordance with the

special technique outlined in 20 C.F.R. § 404.1520a (utilizing only claimant's testimony at the administrative hearing) and determined that the claimant was only mildly limited in her activities of daily living, social functioning, and concentration, persistence or pace and had suffered no episodes of decompensation of an extended duration (Tr. 14). *See Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). Based on this assessment, the ALJ did not include any mental limitations in the RFC determination.

However, the ALJ's analysis of the claimant's mental impairment was flawed for two reasons. First, the ALJ's determination that the claimant's mental impairment was not severe appears to be based in large part on the fact that the claimant had not received any ongoing inpatient or outpatient mental health treatment. But a lack of psychological or psychiatric in-patient or out-patient treatment does not in and of itself support a finding that the claimant's mental impairment was not severe, *see*, *e. g.*, *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment.") [unpublished opinion], and the claimant did in fact receive *some* treatment from her

physicians for depression at least as early as 2000 (Tr. 245). This is especially true when the claimant offered testimony that she was unable to afford the services of a psychologist. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 n.7 (10th Cir. 2003) (noting "that inability to pay may provide a justification for [the] claimant's failure to seek treatment" when there is evidence that the claimant sought and was refused treatment), cited in *Mann v. Astrue*, 284 Fed. Appx. 567, 571 (10th Cir. 2008).

Second, the ALJ failed to even mention the observations of claimant's depression originating from her treating physicians *and* the treatment notes of Shirley O'Dell, whose opinion and notes should be evaluated for evidence regarding the *severity* of claimant's mental health impairment as at least an "other source", even if she is not an "acceptable medical source" as defined by 20 C.F.R. § 404.1513. *See, e. g.*, *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional…. An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). *See also Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008) (discussing the application of SSR 06-03p and noting that "'[o]pinions from [other sources] . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"), *quoting* Soc. Sec. Rul., 06-03p,

2006 WL 2329939, at *3.

It was error for the ALJ to completely omit from his analysis the evidence claimant proffered regarding her depression from her regular physicians and Shirley O'Dell, especially since the ALJ specifically cited "insufficient evidence, especially in the absence of ongoing treatment" as his reason for finding that her depression and anxiety was not severe at step two (Tr. 15). *See*, *e. g.*, *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairment. On remand, if the ALJ concludes that the claimant does have a severe mental impairment, he should determine the claimant's functional limitations, include them in an appropriate RFC, and then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b)(2).

**DATED** this 15th day of September, 2010.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**